Glenn M. Feldman (AZ Bar No. 010867)
(Appearing pro hac vice)
E-mail: glenn.feldman@procopio.com
PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
4800 N. Scottsdale Road, Suite 2000
Scottsdale, AZ 85251
Telephone: 480.682.4312
Facsimile: 619.235.0398

Racheal M. White Hawk (CA Bar No. 327073)
E-mail: racheal.whitehawk@procopio.com
PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRETT MICHAEL GOLDUP,<br><br>    Plaintiff,<br><br>v.<br><br>VALLEY VIEW CASINO AND HOTEL and<br>BOYD LONG,<br><br>    Defendants. | Case No. 3:24-CV-00786-JLS-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:        October 9, 2024<br>Time:        10:00 a.m.<br>Courtroom:  4D (4th Floor)<br><br>Dist. Judge: Janis L. Sammartino<br>Mag. Judge: Allison H. Goddard |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT .......................................................................................................... 4

I.     THE CLAIMS AGAINST THE CASINO MUST BE DISMISSED
       UNDER FRCP 12(b)(7) AND 19 BECAUSE THE TRIBE AND SPCDGI
       ARE REQUIRED PARTIES THAT CANNOT BE JOINED DUE TO
       THEIR TRIBAL SOVEREIGN IMMUNITY. .......................................... 4

       A.     Legal Standards Under FRCP 12(b)(7) and 19 ............................. 4

       B.     The Tribe and SPCDGI Are Required Parties. ............................. 5

              1.     Both the Tribe and SPCDGI Have Interests in This Action
                     That Will Be Impaired Absent Their Involvement ................. 5

              2.     Existing Parties Will Not Adequately Represent the Interests
                     of the Tribe and SPCDGI. .................................................. 7

       C.     The Tribe and SPCDGI Cannot Be Joined .................................. 8

              1.     The Claims Against the Tribe Are Barred by Tribal Sovereign
                     Immunity. ............................................................................. 9

              2.     Tribal Sovereign Immunity Also Protects Arms of Tribes,
                     Such as SPCDGI, from Unconsented Suit. ........................ 10

                     (a)     Method of Creation ................................................. 11

                     (b)     Purpose .................................................................... 11

                     (c)     Control .................................................................... 12

                     (d)     Intent ........................................................................ 13

                     (e)     Financial Relationship ............................................ 13

       D.     The Action Cannot Proceed In Equity and Good Conscience
              Without the Tribe and SPCDGI. ............................................... 13

II.    THE CLAIMS AGAINST MR. LONG MUST BE DISMISSED ON
       MULTIPLE GROUNDS ............................................................................ 15

       A.     Mr. Long Must be Dismissed for Failure to State a Claim Upon
              Which Relief May Be Granted Under FRCP 12(b)(6). ............. 16

       B.     To the Extent the Second Amended Complaint Asserts Claims
              Against Mr. Long in His Official Capacity, Those Claims are Barred

i

by Tribal Sovereign Immunity and Must be Dismissed Under FRCP 12(b)(1). ............................................................................. 16

C.      Mr. Long Has No Personal Liability Under the ADA Here. ................. 19

CONCLUSION ........................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aikins v. St. Helena Hosp.*
    843 F. Supp. 1329 (N.D. Cal. 1994) .................................................................. 19

*Allen v. Gold Country Casino*
    464 F.3d 1044 (9th Cir. 2006) ............................................................. 10, 11, 12

*Alto v. Black*
    738 F.3d 1111 (9th Cir. 2013) .............................................................................. 7

*Am. Greyhound Racing v. Hull*
    305 F.3d 1015 (9th Cir. 2002) .............................................................................. 6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................................ 16

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1988) .............................................................................. 16

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................ 16

*Block v. Tule River Tribal Council*
    No. 1-20-cv-01691-DAD-BAM, 2022 WL 2533483
    (E.D. Cal. July 6, 2022) ...................................................................................... 10

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*
    629 F.3d 1173 (10th Cir. 2010) ............................................................. 11, 12, 13

*Butler v. WinCo Foods, LLC*
    Case No. ED CV 12-980 PA, 2013 WL 12076010
    (C.D. Cal. Mar. 11, 2013) .................................................................................. 20

*Camancho v. Major League Baseball*
    297 F.R.D. 457 (S.D. Cal. 2013) .......................................................................... 5

*Coddington v. Adelphi Univ.*
    45 F. Supp. 2d 211 (E.D.N.Y. 1999) .................................................................. 19

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan*
  928 F.2d 1496 (9th Cir. 1991) ........................................................... 14

*Cook v. AVI Casino Enters., Inc.*
  548 F.3d 718 (9th Cir. 2008) ..................................................... passim

*CP Nat'l Corp. v. Bonneville Power Admin.*
  928 F.2d 905 (9th Cir. 1991) ............................................................. 5

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*
  276 F.3d 1150 (9th Cir. 2002) ........................................................... 9

*Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*
  932 F.3d 843 (9th Cir. 2020) ..................................................... passim

*Doe v. John F Kennedy Univ.*
  No. C–13–01137 DMR, 2013 WL 4565061
  (N.D. Cal. Aug. 27, 2013) ............................................................... 21

*Doe v. Montgomery Hosp.*
  No. CIV. A. 95-3168, 1996 WL 745524
  (E.D. Penn. Dec. 23, 1996) .............................................................. 20

*Drake v. Salt River Pima-Maricopa Indian Cmty.*
  411 F. Supp. 3d 513 (D. Ariz. 2019) ................................................ 10

*Fla. Paraplegic Ass'n Inc. v. Miccosukee Tribe of Fla.*
  166 F.3d 1126 (11th Cir. 1999) ....................................................... 10

*Hardin v. White Mountain Apache Tribe*
  779 F.2d 476 (9th Cir. 1985) ........................................................... 18

*Jamul Action Comm. v. Simermeyer*
  974 F.3d 984 (9th Cir. 2020) ............................................ 4, 6, 9, 14

*Kescoli v. Babbitt*
  101 F.3d 1304 (9th Cir. 1996) ........................................... 4, 5, 6, 14

*Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*
  523 U.S. 751 (1998) ......................................................................... 9

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*
  48 F.4th 934 (9th Cir. 2022) ............................................................. 8

iv

*Langer v. Kiser*
   57 F.4th 1085 (9th Cir. 2023) .................................................................. 15

*Lentini v. Cal. Ctr. for the Arts Escondido*
   370 F.3d 837 (9th Cir. 2004) ................................................... 19, 20, 21

*Linneen v. Gila River Indian Cmty.*
   276 F.3d 489 (9th Cir. 2002) .................................................................. 18

*Makah Indian Tribe v. Verity*
   910 F.2d 555 (9th Cir. 1990) .................................................................... 5

*Maxwell v. County of San Diego*
   708 F.3d 1075 (9th Cir. 2013) ................................................................ 18

*McClendon v. United States*
   885 F.2d 627 (9th Cir. 1989) .................................................................... 6

*McCoy v. Salish Kootenai Coll., Inc.*
   785 F. App'x 414 (9th Cir. 2019) ......................................................... 12

*McShan v. Sherrill*
   283 F.2d 462 (9th Cir. 1960) .................................................................... 5

*Michigan v. Bay Mills Indian Cmty.*
   572 U.S. 782 (2014) .................................................................................. 9

*Miller v. Wright*
   705 F.3d 919 (9th Cir. 2013) ........................................................... 17, 18

*Molski v. M.J. Cable, Inc.*
   481 F.3d 724 (9th Cir. 2007) .................................................................. 15

*Neff v. Am. Dairy Queen Corp.*
   58 F.3d 1063 (5th Cir. 1995) .................................................................. 19

*Nguyen v. Cache Creek Casino Resort*
   No. 2:20-cv- 1748-TLN-KJN PS, 2021 WL 22434
   (E.D. Cal. Jan. 4, 2021) .......................................................................... 10

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*
   498 U.S. 505 (1991) .................................................................................. 9

*Pan Am. Co. v. Sycuan Band of Mission Indians*
    884 F.2d 416 (9th Cir. 1989) ................................................................. 9

*Pistor v. Garcia*
    791 F.3d 1104 (9th Cir. 2015) ...................................................... 17, 18

*Puyallup Tribe v. Department of Game*
    433 U.S. 165 (1977) ............................................................................ 9

*Randol v. Harrah's Rincon Resort & Casino*
    CASE NO. 08-CV-0642 W (BLM), 2008 WL 11337253
    (S.D. Cal. May 19, 2008) ............................................................ 1, 6, 7

*Santa Clara Pueblo v. Martinez*
    436 U.S. 49 (1978) .............................................................................. 9

*Shermoen v. United States*
    982 F.2d 1312 (9th Cir. 1992) ...................................................... 6, 18

*Stock West, Inc. v. Confederated Tribes*
    873 F.2d 1221 (9th Cir. 1989) ........................................................ 17

*United States v. Morvant*
    843 F. Supp. 1092 (E.D. La. 1994) ................................................. 21

*United States v. Oregon*
    657 F.2d 1009 (9th Cir. 1981) ........................................................ 18

*United States v. United States Fidelity & Guaranty Co.*
    309 U.S. 506 (1940) ............................................................................ 9

*White v. Univ. of Cal.*
    765 F.3d 1010 (9th Cir. 2014) ......................................... 5, 6, 11, 14

**CALIFORNIA CASES**

*People v. Miami Nation Enters.*
    386 P.3d 357 (Cal. 2016) ................................................................. 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FEDERAL STATUTES, REGULATIONS, AND RULES**

25 U.S.C.

§§ 2701 *et seq.* ........................................................................................... 2
§ 2702(1) ...................................................................................................... 12
§ 2702(2) ...................................................................................................... 12
§ 2710(b)(2)(A) ........................................................................................... 19
§ 2710(b)(2)(B) ............................................................................................. 4
§ 2710(b)(3) ................................................................................................... 4
§ 2712(b)(1) ................................................................................................. 19

42 U.S.C.

§ 12182(a) ................................................................................................ 1, 19

Federal Rules of Civil Procedure

Rule 12(b)(1) ................................................................................... 16, 17, 18
Rule 12(b)(6) ............................................................................................... 16
Rule 12(b)(7) ............................................................................................. 4, 5
Rule 19 ................................................................................................. passim
Rule 19(a) ................................................................................................. 4, 5
Rule 19(a)(1) ............................................................................................ 7, 8
Rule 19(a)(1)(B)(i) ...................................................................................... 4
Rule 19(a)(2)(i) ............................................................................................. 5
Rule 19(b) .................................................................................. 4, 5, 13, 14

89 Fed. Reg. 944 .......................................................................................... 2

MPA ISO DEFENDANTS' MOTION TO DISMISS
Case No. 3:24-cv-00786-JLS-AHG

# **INTRODUCTION**

Plaintiff Garrett Michael Goldup ("Plaintiff") has brought renewed claims against a tribal casino and an individual employee of the casino alleging violations of Title III of the Americans with Disabilities Act ("ADA").  42 U.S.C. § 12182(a).  The Plaintiff alleges that he was prohibited from bringing what he alleges is his "service dog" into the casino, in violation of the public accommodation  provisions of the ADA.[1]

Plaintiff's claims against the facility name as a Defendant "Valley View Casino & Hotel."  But, as discussed below, "Valley View Casino & Hotel" is not a legal entity subject to suit.  Rather, it is simply the trademarked name for the casino/hotel gaming enterprise owned and operated by the San Pasqual Band of Mission Indians (the "San Pasqual Band" or the "Tribe"), a federally recognized Indian tribe.  While this pleading flaw could be addressed in several different ways under several different Federal Rules of Civil Procedure ("FRCP" or "Rule"), we have followed the precedent this Court set in *Randol v. Harrah's Rincon Resort & Casino*, CASE NO. 08-CV-0642 W (BLM), 2008 WL 11337253 (S.D. Cal. May 19, 2008).  That case involved an identical pleading error in which the plaintiff sued a tribal casino, which was not a legal entity, and the defendant moved to dismiss.  After discussing several alternatives, the *Randol* Court concluded that "deciding the motion under Rule 19 provides the best framework for getting to the heart of the jurisdictional dispute."  2008 WL 11337253, at *4.

Accordingly, we have followed that approach in this Memorandum.  Our first argument demonstrates that Plaintiff's claims against the facility must be dismissed under FRCP 19 because the San Pasqual Band and a wholly owned tribal enterprise are necessary parties that cannot be joined to this matter due to tribal sovereign immunity.

---

[1] While the merits of this claim are not at issue in connection with the present motion, if and when necessary, the Defendants would be prepared to demonstrate that their actions in barring the Plaintiff's dog from the facility were in full compliance with the ADA.

In our second argument we demonstrate that Plaintiff's claim against the individual defendant, Mr. Boyd Long, must also be dismissed because the bare bones allegations regarding Mr. Long fail to state a claim upon which relief may be granted. Additionally, sovereign immunity bars the claim against Mr. Long and, finally, the ADA does not authorize claims for liability against individuals under the circumstances of this case.

## STATEMENT OF FACTS

Many of the facts supporting this Motion are set forth in the declarations of Stephen W. Cope and Joe Navarro, filed contemporaneously herewith. Both Mr. Cope and Mr. Navarro are enrolled members of the San Pasqual Band. Declaration of Stephen W. Cope (the "Cope Decl.") ¶ 3; Declaration of Joe Navarro (the "Navarro Decl.") ¶ 2. Mr. Cope is the Chairman of the Tribe, Cope Decl. ¶ 3, and Mr. Navarro is the President/CEO of San Pasqual Casino Development Group, Inc. ("SPCDGI"), Navarro Decl. ¶ 5. Their declarations then go on to establish the following relevant facts:

1.      The San Pasqual Band is a federally recognized Indian tribe. Cope Decl. ¶¶ 3–4. *See also* 89 Fed. Reg. 944, 946 (Jan. 8, 2024) (BIA list of federally recognized Indian tribes).

2.      The San Pasqual Band occupies and governs the San Pasqual Indian Reservation in San Diego County, California. Cope Decl. ¶ 5.

3.      The San Pasqual Band has entered into a Tribal-State Gaming Compact (the "Compact") with the State of California. That Compact was entered into pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq.* Cope Decl. ¶ 6.

4.      Pursuant to the IGRA and the Compact, the Tribe has established a casino/hotel gaming enterprise on its Reservation. Cope Decl. ¶ 7; Navarro Decl. ¶ 3.

5.      The Tribe's casino/hotel gaming enterprise (the "Casino") operates under the trademarked name "Valley View Casino & Hotel." Valley View Casino & Hotel

2

is just a name, it is not a legal entity that can sue or be sued. Cope Decl. ¶ 8; Navarro Decl. ¶ 14.

6. While the San Pasqual Band owns 100% of the gaming enterprise, in 2004 the Tribe decided to establish a tribal entity to operate the Casino for the Tribe. It did so by creating a tribal corporation, under tribal law, called San Pasqual Casino Development Group, Inc. ("SPCDGI"). Cope Decl. ¶ 9; Navarro Decl. ¶ 4.

7. A copy of SPCDGI's Charter of Incorporation ("Charter") is attached to the Cope Declaration as Exhibit 1. Cope Decl. ¶ 10.

8. Under Section 3 of its Charter, SPCDGI has the authority "to oversee and direct the development, financing, construction, operation, maintenance and management of the Tribe's gaming operation for the benefit of the Tribe and its members." Cope Decl. ¶ 11.

9. SPCDGI functions as an "arm of the Tribe" and the Tribe owns 100% of SPCDGI as its sole shareholder. Cope Decl. ¶ 12.

10. Under its Charter, SPCDGI is designated as an "authorized agency" of the Tribe (Charter, Section 2(c)) and any exercise of SPCDGI's power or authority "shall constitute the exercise of a governmental function of the Tribe." (Charter, Section 5). Navarro Decl. ¶ 7.

11. The Casino operated by SPCDGI is regulated by the San Pasqual Tribal Gaming Agency (a separate tribal entity) under the Tribe's Gaming Ordinance. Navarro Decl. ¶ 8.

12. SPCDGI is governed by a nine-member Board of Directors. Five of the nine members are San Pasqual tribal members elected by the San Pasqual General Council, the Tribe's governing body. The other four Board Members are the Tribe's Chief Financial Officer and three high-level Casino management employees. (Charter, Section 4) Navarro Decl. ¶ 9.

13. The five tribal Board Members are subject to removal for cause by the San Pasqual General Council. (Charter, Section 4(F)). Navarro Decl. ¶ 10.

14.     As a tribal enterprise, Casino revenues generated by SPCDGI inure to the benefit of the Tribe and its members, as required under IGRA (25 U.S.C. § 2710(b)(2)(B)) and under the Tribe's federally-approved Gaming Revenue Allocation Plan, as required under 25 U.S.C. § 2710(b)(3).  Navarro Decl. ¶ 11.

15.     Under its Charter, SPCDGI has been granted the same sovereign immunity as the Tribe itself. (Charter, Section 6).  Navarro Decl. ¶ 13.

16.     The Casino is owned by the Tribe and operated for the Tribe by SPCDGI. Navarro Decl. ¶ 15.

17.     The Tribe and SPCDGI have not waived their tribal sovereign immunity in connection with this lawsuit.  Cope Decl. ¶ 13; Navarro Decl. ¶ 16.

## ARGUMENT

**I.     THE CLAIMS AGAINST THE CASINO MUST BE DISMISSED UNDER FRCP 12(B)(7) AND 19 BECAUSE THE TRIBE AND SPCDGI ARE REQUIRED PARTIES THAT CANNOT BE JOINED DUE TO THEIR TRIBAL SOVEREIGN IMMUNITY.**

### A.     Legal Standards Under FRCP 12(b)(7) and 19

FRCP 19 requires that an absent party be joined when litigation may impair its ability to protect its interest.  Where a required party cannot feasibly be joined, equity and good conscience may require dismissal of the action.  *See Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020) (citing Rules 19(a) and 19(b)); *Diné Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 851 (9th Cir. 2020) (citing Rules 19(a), 19(b) and 12(b)(7)).

"Whether an action should be dismissed under Rule 19 involves a two-part analysis." *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996).  "First, the district court must determine whether the absent party is a 'necessary party.'" *Id.*  Rule 19(a) guides this determination, requiring that "if feasible" an entity "must be joined" if the entity "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  Rule 19(a)(1)(B)(i).  Second,

4

1  "[u]nder Rule 19, if the party 'who is required to be joined if feasible cannot be joined,

2  the court must determine whether, in equity and good conscience, the action should

3  proceed among the existing parties or should be dismissed. *Diné Citizens*, 932 F.3d at

4  851 (quoting Rule 19(b)). "If it cannot proceed, a motion to dismiss under Rule

5  12(b)(7) for failure to join a party is properly granted." *Id.*

6      "Rule 19 is designed to protect the interests of absent parties, as well as those

7  ordered before the court, from multiple litigation, inconsistent judicial determinations

8  or the impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*,

9  928 F.2d 905, 911 (9th Cir. 1991). The inquiry under Rule 19(a) is practical and fact

10  specific, *White v. Univ. of Cal.* 765 F.3d 1010, 1026 (9th Cir. 2014), and "the court

11  may consider evidence outside the pleadings." *Camancho v. Major League Baseball*,

12  297 F.R.D. 457, 460–61 (S.D. Cal. 2013) (citing *McShan v. Sherrill*, 283 F.2d 462,

13  464 (9th Cir. 1960)).

14      **B.    The Tribe and SPCDGI Are Required Parties.**

15      "Under Rule 19(a)(2)(i), absent parties are necessary if they 'claim[ ] an interest

16  relating to the subject of the action and [are] so situated that the disposition of the

17  action in the [parties'] absence may . . . as a practical matter impair or impede the

18  [parties'] ability to protect that interest.'" *Kescoli v. Babbitt,* 101 F.3d 1304, 1309 (9th

19  Cir. 1996) (alternations in original) (quoting Rule 19(a)(2)(i)).

20
      **1.    Both the Tribe and SPCDGI Have Interests in This Action
21      That Will Be Impaired Absent Their Involvement.**

22      "To satisfy Rule 19, an interest must be legally protected and must be 'more

23  than a financial stake.'" *Diné Citizens*, 932 F.3d at 852 (quoting *Makah Indian Tribe*

24  *v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). "If a legally protected interest exists, the

25  court must further determine whether that interest will be *impaired or impeded* by the

26  suit." *Diné Citizens*, 932 F.3d at 852 (quoting *Makah Indian Tribe*, 910 F.2d at 558)

27  (emphasis in original).

28

The Ninth Circuit has found that Indian tribes satisfy this Rule 19 standard in a wide range of cases involving commercial, cultural, and governmental interests. *See, e.g.*, *Jamul Action Comm.*, 974 F.3d at 988, 997–98 (challenging federal recognition of tribal government); *Diné Citizens*, 932 F.3d at 847 (questioning adequacy of environmental review of on-reservation mining permit); *White*, 765 F.3d at 1015 (asserting historic and cultural claims to Native American human remains); *Am. Greyhound Racing v. Hull,* 305 F.3d 1015, 1018, 1022 (9th Cir. 2002) (protecting tribal interest in tribal-state gaming compact); *Kescoli*, 101 F.3d at 1307 (protection of sacred tribal burial sites); *McClendon v. United States*, 885 F.2d 627, 633 (9th Cir. 1989) (enforcement of tribal lease agreement). The common denominator in all these cases is that the absent tribe asserted a protected interest in the subject matter of the case that would be impaired if the case were decided in the tribe's absence. And that is precisely the situation presented by this motion.

Here, Plaintiff has alleged violations of the ADA and is seeking substantial damages, but has not sued the owner of the Casino, the San Pasqual Band, or the operator of the Casino, SPCDGI. Rather, he has sued a trademarked name that is not a legal entity. Cope Decl. ¶ 8; Navarro Decl. ¶ 14.

In *Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992), the Ninth Circuit found absent Indian tribes to be required parties because Rule 19 is intended "to preserve the rights of parties to make known their interests and legal theories," including the interest of the tribes "in preserving their own sovereign immunity" and the "concomitant right not to have their legal duties judicially determined without consent." *Id*. at 1318 (cleaned up).

As noted above, *Randol v. Harrah's Rincon Resort and Casino* involved facts virtually identical to those presented here. CASE NO. 08-CV-0642 W (BLM), 2008 WL 11337253 (S.D. Cal. May 19, 2008). In *Randol*, the plaintiff attempted to bring claims against a tribal casino for personal injuries, but sued the casino's name, which was not a legal entity. The defendant moved to dismiss under Rule 19 and the court

held that "it is clear that the Tribe is a necessary party given that it enjoys sole ownership and ultimate authority over the Casino, the locus of the alleged injury." *Randol*, 2008 WL 11337253, at *1, 4.

So too here. Proceeding with this action in the absence of the Casino's sole owner will plainly impair the Tribe's ability to protect its interest in defending against the Plaintiff's allegations of unlawful conduct.

The same concerns apply equally to SPCDGI. This tribally created and tribally owned entity operates and manages the Casino for the Tribe under a tribally issued Charter. *See* Navarro Decl. ¶¶ 7, 15. Here again, allowing this case to proceed without the involvement of SPCDGI would clearly prevent that entity from protecting its interest in refuting the Plaintiff's claims.

### 2. Existing Parties Will Not Adequately Represent the Interests of the Tribe and SPCDGI.

A determination under Rule 19(a)(1) that an absent party's ability to protect its interest will be impaired, requires evaluation of whether the existing parties will adequately represent the absent party's interest. *Diné Citizens*, 932 F.3d at 852. The Ninth Circuit considers three factors in this analysis:

> [1] whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments; [2] whether the party is capable of and willing to make such arguments; and [3] whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Id.* (quoting *Alto v. Black*, 738 F.3d 1111, 1127–28 (9th Cir. 2013)).

In this case, none of the Defendants can adequately assert and defend the interests of the San Pasqual Band or SPCDGI. As noted above, Defendant "Valley View Casino & Hotel" is not a legal entity and therefore cannot assert these rights. Neither can the individual defendant, Mr. Long, serve this purpose. As an individual who might share the Tribe's and SPCDGI's interest in dismissing the case, he does not share the <u>sovereign</u> interests of the absent parties. As noted above, the interests

7

the Tribe and SPCDGI seek to assert here are not the interests of any individual, but rather are governmental interests: the operation of the tribally owned Casino, the preservation of their sovereignty and sovereign immunity and their interest in not having their legal rights and duties judicially determined without their consent. Navarro Decl. ¶ 7; Charter, Section 5;[2] *see Diné Citizens*, 932 F.3d at 855 (finding federal government's interest in defending decisions and complying with environmental laws inadequate to represent tribe's "sovereign interest" in ensuring its power plant continued to operate and provide profits to the tribe); *see also Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 944–45 (9th Cir. 2022) (finding although federal government shared tribe's interest in "outcome of case," it was nonetheless inadequate representative of the tribe, whose primary interest was in fulfilling its own sovereign water and fishing rights).

These are interests that only the Tribe or SPCDGI can assert here. No individual can assert the governmental rights and interests of the Tribe. Moreover, as discussed below, the ADA does not contemplate the type of individual liability asserted against Mr. Long in this case, meaning that the claims against him will be dismissed on those grounds.

In short, the only parties that can and should be making the arguments that the Tribe and SPCDGI seek to raise here are the Tribe and SPCDGI. None of the Defendants can adequately represent those governmental interests, and thus the Tribe and SPCDGI are required parties here within the meaning of Rule 19(a)(1).

## C.    The Tribe and SPCDGI Cannot Be Joined

The next step in the Rule 19 inquiry is to determine whether the Tribe and SPCDGI can be feasibly joined as parties to this litigation. *See Diné Citizens*, 932 F.3d at 856. Here, they cannot be joined as parties due to tribal sovereign immunity.

---

[2] SPCDGI's functions are governmental. Under Section 5 of its Charter, the Tribe has mandated that "any exercise by [SPCDGI] of any power or authority under this Charter shall constitute the exercise of a governmental function of the Tribe."

1.    <u>**The Claims Against the Tribe Are Barred by Tribal Sovereign Immunity.**</u>

Tribal sovereign immunity is "a necessary corollary to Indian sovereignty and self-governance." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (citation omitted). "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Jamul Action Comm.*, 974 F.3d at 991 (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002) ("Federally recognized Indian tribes enjoy sovereign immunity from suit, and may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress." (citations omitted)).

Tribal sovereign immunity is not a discretionary doctrine. *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). Absent an effective waiver, a court has no choice but to dismiss an action against an immune entity, "irrespective of the merits of [the] claims." *Id*. (citing *Puyallup Tribe v. Department of Game*, 433 U.S. 165, 173 (1977) and *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512 (1940)).

"Tribal sovereign immunity extends to both the governmental and commercial activities of a tribe, whether undertaken on or off its reservation." *Jamul Action Comm.*, 974 F.3d at 991 (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754–55 (1998); *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008)). A tribal nation's sovereign immunity, "like all others, is subject to the superior and plenary control of Congress. But 'without congressional authorization,' the 'Indian Nations are exempt from suit.'" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quoting *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 512 (1940).

9

Congress has not abrogated any aspect of the Tribe's sovereign immunity with respect to the issues raised in this action.  Federal courts have repeatedly held that private lawsuits against Indian tribes or tribal enterprises alleging ADA violations (such as presented here) are barred by tribal sovereign immunity.  *See Fla. Paraplegic Ass'n Inc. v. Miccosukee Tribe of Fla.*, 166 F.3d 1126, 1133–34 (11th Cir. 1999) (finding private lawsuit barred because "Congress did not contemplate that Indian tribes would be subject to private lawsuits for violating Title III of the ADA"); *Drake v. Salt River Pima-Maricopa Indian Cmty.*, 411 F. Supp. 3d 513, 519–20 (D. Ariz. 2019) (private suit alleging ADA violations for tribal casino's refusal to permit entry of service dog barred by tribal sovereign immunity); *Nguyen v. Cache Creek Casino Resort*, No. 2:20-cv- 1748-TLN-KJN PS, 2021 WL 22434, at *4 (E.D. Cal. Jan. 4, 2021) (because California tribal casino enjoys same sovereign immunity as parent tribe, "the court lacks subject-matter jurisdiction and Nguyen's [ADA-based] claims must be dismissed"), *aff'd* No. 21-15351, 2022 WL 260871 (9th Cir. Jan. 27, 2021) (mem.); *Block v. Tule River Tribal Council*, No. 1-20-cv-01691-DAD-BAM, 2022 WL 2533483, at *7 (E.D. Cal. July 6, 2022) (dismissing private ADA claims against Indian tribe because "sovereign immunity involves a right which courts have no choice, in the absence of a waiver, but to recognize") (citation omitted).

Nor has the Tribe waived its sovereign immunity here.  Cope Decl. ¶ 13. Accordingly, joinder of the Tribe to this action is not possible.

### 2.    Tribal Sovereign Immunity Also Protects Arms of Tribes, Such as SPCDGI,  from Unconsented Suit.

Tribal sovereign immunity also extends to tribally created and controlled entities or enterprises that operate for the benefit of the tribe.  These have come to be called "arms of the tribe."  *Cook*, 548 F.3d at 720, 726 (tribal casino was "an arm of the Fort Mojave Tribe" and therefore "enjoys sovereign immunity from Cook's suit"); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) ("When the tribe establishes an entity to conduct certain activities, the entity is immune if it functions

as an arm of the tribe."); *White*, 765 F.3d at 1025 ("Tribal sovereign immunity not only protects tribes themselves, but also extends to arms of the tribe acting on behalf of the tribe."). In *White*, the Ninth Circuit adopted a five-factor test to determine if an entity functions as an "arm of the tribe" so as to enjoy sovereign immunity:

> In determining whether an entity is entitled to sovereign immunity as an arm of the tribe, we examine several factors including: (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

*White*, 765. F.3d at 1025 (internal quotation marks and citation omitted). This is known as the *Breakthrough* Test or the "arm of the tribe" test, as adopted by the Ninth Circuit from the Tenth Circuit decision in *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010). *Id.*

All five elements of the *Breakthrough* Test show that SPCDGI is an "arm of the tribe" and that it is entitled to sovereign immunity.

### (a)   Method of Creation

If the Tribe formed the entity, that factor weighs in favor of finding that the entity has sovereign immunity. *Cook*, 548 F.3d at 726; *Breakthrough*, 629 F.3d at 1191. Here, SPCDGI was formed by the Tribe under tribal law. Cope Decl. ¶ 9; Navarro Decl. ¶ 6.[3]

Therefore, this factor weighs in favor of finding that the Casino has tribal sovereign immunity.

### (b)   Purpose

If the entity's purpose is for the financial benefit of the Tribe and to enable it to

---

[3]  It does not matter whether the tribal enterprise is created in a corporate or non-corporate form for sovereign immunity purposes. *Cook*, 548 F.3d at 726 n. 5 ("We see no importance in the distinction that here ACE is a tribal corporation while the casino in *Allen* may have been unincorporated.").

engage in various governmental functions, that factor weighs in favor of finding the entity is protected by tribal sovereign immunity. *Breakthrough*, 629 F.3d at 1192.

The Ninth Circuit has held that a tribal casino is entitled to sovereign immunity as an arm of the tribe because it "is not a mere revenue-producing tribal business"; rather, the purpose of the creation and operation of Indian casinos under IGRA is "to promote 'tribal economic development, self-sufficiency, and strong tribal governments.'" *Allen*, 464 F.3d at 1046 (quoting 25 U.S.C. § 2702(1)).  One of the principal purposes of the IGRA is "to insure that the Indian tribe is the primary beneficiary of the gaming operation." *Id.* (quoting 25 U.S.C. § 2702(2)).  Here, the Tribe's purpose in creating SPCDGI was precisely that: "to oversee and direct the development, financing, construction, operation, maintenance and management of the Tribe's gaming operation for the benefit of the Tribe and its members."  Charter, Section 3.  SPCDGI thus carries out the purpose of promoting tribal self-governance and self-determination, and this factor therefore weighs in favor of finding that the Casino has sovereign immunity.

(c)    Control

This factor concerns the entity's "structure, ownership, and management, including the amount of control the Tribe has over the entities." *Breakthrough*, 629 F.3d at 1191.   Relevant considerations include the entity's formal governance structure, the extent to which it is owned by the tribe, and the entity's day-to-day management. *People v. Miami Nation Enters.*, 386 P.3d 357, 373 (Cal. 2016).  If the entity is owned and operated by the Tribe, this factor weighs in favor of sovereign immunity. *Allen*, 464 F.3d at 1046; *see also McCoy v. Salish Kootenai Coll., Inc.*, 785 F. App'x 414, 415 (9th Cir. 2019) (mem.) (holding significant control by a tribe over its entity demonstrates the entity is an arm of the tribe).  If the majority of the entity's board members are tribal members, that also weighs in favor sovereign immunity. *Cook*, 548 F.3d at 721, 726.  That is the case here.  Both the Casino and SPCDGI are 100% owned by the Tribe, Cope Decl. ¶¶ 9, 12; Navarro Decl. ¶ 7, and the majority of

12

SPCDGI's board members are tribal members, subject to removal by the Tribe's governing body. Navarro Decl. ¶¶ 9, 10. This element of tribal control therefore weighs in favor of finding that SPCDGI is protected by tribal sovereign immunity.

(d)   <u>Intent</u>

If the entity's formation documents indicate an intent by the Tribe for the entity to share in immunity, this factor weighs in favor of finding that the entity has tribal sovereign immunity. *Breakthrough*, 629 F.3d at 1193–94. Again, that is the case here. Under Section 6 of SPCDGI's Charter, the Tribe has granted it the same sovereign immunity as the Tribe itself. Thus, this factor weighs in favor of finding that SPCDGI shares in the Tribe's sovereign immunity.

(e)   <u>Financial Relationship</u>

If the economic benefits produced by the Casino "inure to the Tribe's benefit," that weighs in favor of sovereign immunity. *Cook*, 548 F.3d at 726. That is the case here. Casino revenues generated by SPCDGI "inure to the benefit of the Tribe and its members." Navarro Decl. ¶ 11; Charter, Sections 3, 8 and 9. This factor weighs in favor of finding that SPCDGI shares in the Tribe's sovereign immunity.

Under the Ninth Circuit's test, SPCDGI plainly qualifies as an arm of the San Pasqual Band and shares in the Tribe's sovereign immunity. Nor has SPCDGI waived that immunity here. Navarro Decl. ¶ 16. As a result, and like the Tribe itself, SPCDGI therefore cannot be joined to this litigation.

**D.**   **<u>The Action Cannot Proceed In Equity and Good Conscience Without the Tribe and SPCDGI.</u>**

To determine whether an action may fairly proceed without a required party, Rule 19(b) establishes four non-exclusive factors:

> (1)   the extent to which a judgment rendered in the [party's] absence might prejudice that [party] or the existing parties;
>
> (2)   the extent to which any prejudice could be lessened or avoided by:

(A)      protective provisions in the judgment;
(B)      shaping the relief; or
(C)      other measures;
(3)      whether a judgment rendered in the [party's] absence would be adequate; and
(4)      whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

While a court should be "extra cautious" before dismissing an action where no alternative forum exists, "[i]f the necessary party is immune from suit, there may be 'very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor.'" *Kescoli*, 101 F.3d at 1311 (quoting *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1499 (9th Cir. 1991)).

The Ninth Circuit reaffirmed the determinative nature of tribal sovereign immunity in a more recent pronouncement on this issue in 2020:

> The balancing of equitable factors under Rule 19(b) almost always favor dismissal when a tribe cannot be joined due to tribal sovereign immunity. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996); *see also Diné Citizens*, 932 F.3d at 857 ("[T]here is a '***wall of circuit authority***' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—'virtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether [an alternate] remedy is available, if the absent parties are Indian tribes invested with sovereign immunity.'" (alteration in original) (quoting *White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014)).

*Jamul Action Comm.*, 974 F.3d at 998 (emphasis added).

In the case, there is nothing in the Plaintiff's Second Amended Complaint that would call this presumption into question. This "wall of circuit authority" therefore requires dismissal of this action under Rule 19 as against the improperly named Defendant, "Valley View Casino & Hotel," as well as the Casino's actual owner and operator, the San Pasqual Band and SPCDGI.

## II.    THE CLAIMS AGAINST MR. LONG MUST BE DISMISSED ON MULTIPLE GROUNDS

As this Court ruled in its June 26, 2024, Order dismissing Plaintiff's First Amended Complaint, private plaintiffs are limited to injunctive relief under Title III of the ADA.  ECF 15 at 8 (citing *Langer v. Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023)). Because Plaintiff continues to seek monetary damages, ECF 17 at 4, this Court should, as it did with Plaintiff's First Amended Complaint, dismiss his claim to the extent he seeks monetary damages.  ECF 15 at 8 (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) ("Monetary damages are not available in private suits under Title III of the ADA.")).  Beyond this, however, and as discussed below, there are multiple grounds upon which Plaintiff's remaining claim should be dismissed in its entirety.

In addition to the improperly named Casino, Plaintiff named one individual defendant in his Second Amended Complaint—Mr. Long "representing Valley View Casino & Hotel."  ECF 17 at 4.  Plaintiff claims he attempted to enter the Casino on April 28, 2024 with his "County of San Diego licensed, prescribed, and trained medical service dog."  ECF 17 at 2, and that John Doe No. 1 obstructed Plaintiff's entrance to the Casino and declared Plaintiff could not enter with his service dog. ECF 17 at 2.  Plaintiff claims John Doe No. 2 then "approached Plaintiff and Hunter [his dog] aggressively" which caused his dog to "stand[] and lean[] into Plaintiff." ECF 17 at 2.  Plaintiff "expla[ined] that Hunter was a medically necessary service dog" and claims "John Doe No. 2 maintained that Hunter did not qualify as a service animal due to alleged behavioral inconsistencies" and "barred [Plaintiff] from accessing the facility."  ECF 17 at 2.

In contrast to these activities that allegedly took place on April 28, 2024, Plaintiff's sole allegation against Mr. Long is that in an email and voicemail dated April 30, 2024, two days later, Mr. Long told Plaintiff that "Valley View Casino & Hotel follows Federal ADA Guidelines for service animals."  ECF 17 at 4.

## A.    Mr. Long Must be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted Under FRCP 12(b)(6).

Rule 12(b)(6) requires dismissal when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Plaintiff's sole allegation against Mr. Long is that in an email and voicemail left *two days after* Plaintiff's dog was denied entry to the Casino, Mr. Long told Plaintiff that "Valley View Casino & Hotel follows Federal ADA Guidelines for service animals." ECF 17 at 4.  But this factual statement provides no basis for finding that Mr. Long has acted unlawfully and Plaintiff alleges no "cognizable legal theory" under which Mr. Long would be held liable here. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Furthermore, Plaintiff has not pled any facts that would allow this Court "to draw a reasonable inference that [Mr. Long] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.  Plaintiff does not allege any factual information about Mr. Long being involved in allegedly denying him access to the Casino, nor is there any.

As a result, Plaintiff's claim against Mr. Long must be dismissed for failure to state a claim upon which relief may be granted per FRCP 12(b)(6).

## B.    To the Extent the Second Amended Complaint Asserts Claims Against Mr. Long in His Official Capacity, Those Claims are Barred by Tribal Sovereign Immunity and Must be Dismissed Under FRCP 12(b)(1).

Because tribal sovereign immunity is "quasi-jurisdictional" in nature, a motion under FRCP 12(b)(1) is "the proper vehicle for invoking sovereign immunity from

suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 & n.2 (9th Cir. 2015). When subject matter jurisdiction is challenged under FRCP 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

The Second Amended Complaint is silent as to whether Mr. Long is being sued in his official or individual capacity. However, there is ample basis upon which the Court could conclude that he has been named in his official capacity. The Second Amended Complaint identifies him as "representing Valley View Casino & Hotel" and the factual allegations contained in the Second Amended Complaint relate solely to the alleged actions of Mr. Long while he was on duty and acting within the scope of his authority as a Casino employee. ECF 17 at 4.

To the extent that Mr. Long is being sued here in his official capacity, those claims are barred by tribal sovereign immunity. The law on this point is clear and compelling. For example, in *Cook*, the plaintiff alleged, *inter alia*, that individual employees of the tribal casino had overserved a third party at a casino bar, after which the plaintiff was seriously injured in a highway accident caused by the third party. He sued the casino employees for negligence. The Ninth Circuit rejected those claims, holding that:

> tribal immunity protects tribal employees acting in their official capacity and within the scope of their authority. Cook has sued Dodd and Purbaugh in their official capacity only, and thus the district court correctly dismissed them from this suit.

548 F.3d at 727.

More recently, in *Miller v. Wright*, 705 F.3d 919 (9th Cir. 2013), the plaintiffs, owners of smoke shops on the Puyallup Indian Reservation, sued the Puyallup Tribe and two tribal employees, challenging the legality of tribal cigarette taxes imposed on their cigarette sales. The Ninth Circuit affirmed the dismissal of the claims against the tribal employees, who were involved in assessing and collecting the tribal tax, stating:

> A suit against the Tribe and its officials "in their official

17

> capacities is a suit against the tribe [and] is barred by tribal sovereign immunity unless that immunity has been abrogated or waived." *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002). "Tribal sovereign immunity extends to tribal officials when acting in their official capacity and within the scope of their authority . . . ." *Cook*, 548 F.3d at 727 (citation and internal quotation marks omitted).

*Miller*, 705 F.3d at 927–28; *see also Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479–80 (9th Cir. 1985); *United States v. Oregon*, 657 F.2d 1009, 1012 n. 8 (9th Cir. 1981) (and citations collected there).

In other contexts, the Ninth Circuit has begun to develop what it describes as a "remedy-focused analysis" under which it determines whether tribal officials and employees sued in their *individual capacities* may or may not be protected by tribal sovereign immunity. *See, e.g.*, *Pistor*, 791 F.3d at 1113; *Maxwell v. County of San Diego*, 708 F.3d 1075, 1087–89 (9th Cir. 2013). Under this form of analysis, the Court has cautioned that when faced with a claim against a tribal official or employee named in her individual capacity,

> we must be sensitive to whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the [sovereign] from acting, or to compel it to act."

*Maxwell*, 708 F.3d at 1088 (quoting *Shermoen*, 982 F.2d at 1320) (alteration in original). But even those cases have reaffirmed the continuing validity of the longstanding doctrine that tribal employees, sued in their official capacities for acts taken within the scope of their authority, are protected by tribal sovereign immunity. *Pistor*, 791 F.3d at 1112; *Maxwell*, 708 F.3d at 1089.

Thus, because the Second Amended Complaint asserts claims against Mr. Long in his official capacity and for actions taken within the scope of his authority, those claims are barred by tribal sovereign immunity and must be dismissed under FRCP 12(b)(1).

### C.     Mr. Long Has No Personal Liability Under the ADA Here.

In addition to the other grounds for dismissal discussed above, Title III of the ADA does not impose personal liability against Mr. Long under the circumstances of this case.

Title III of the ADA concerns public accommodations and provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any public place of accommodation by any person who *owns*, *leases* (or leases to), or *operates* a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

With respect to the Casino, the Tribe owns the Casino while SPCDGI operates it for the Tribe.  Cope Decl. ¶ 9; Navarro Decl. ¶ 15.  Mr. Long does not own or operate it.  The Tribe owns and SPCDGI operates the Casino under IGRA.  Under IGRA, the Tribe is required to have the "sole proprietary interest" in the Casino.  25 U.S.C. §§ 2710(b)(2)(A), 2712(b)(1).

Courts interpreting the term "operate" under Title III of the ADA have held that "'to operate' means 'to put or keep in operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'" *Lentini v. Cal. Ctr. for the Arts Escondido*, 370 F.3d 837, 849 (9th Cir. 2004) (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995); *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1335 (N.D. Cal. 1994)).

As this Court recognized in its June 26 Order, ECF 15 at 12, courts generally consider three factors when determining whether an individual may be liable under the ADA as an operator: (1) whether the person is "*in a position of authority*," (2) whether the person has "the *power and discretion* to perform potentially discriminatory acts" and (3) whether the discriminatory acts "are the result of the exercise of the individual's own discretion, and not merely the implementation of institutional policies or the mandates of superiors." *Coddington*, 45 F. Supp. 2d at 215 (emphasis added); *see also Lentini*, 370 F.3d at 849 (citing *Coddington*, 45 F. Supp. 2d at 217).

19

This Court further acknowledged in its June 26 Order that in *Lentini*, individual liability was appropriate because the theater director was in a position of authority to determine who could be admitted to the theater, the theater had no policy barring admission of service animals who made minor noises during performances, and the director instructed staff to exclude the plaintiff's service animal. ECF 15 at 12 (citing *Lentini*, 370 F.3d at 849). Here, however, Mr. Long may not be held personally liable under any of the three factors the Court identified.

As to the first and second factors, the Second Amended Complaint merely alleges that Mr. Long is "representing Valley View Casino & Hotel." ECF 17 at 4. The Second Amended Complaint does not state what position of authority Mr. Long has. Moreover, nothing in the complaint indicates Mr. Long has any ownership of the Casino or control over the Tribe's policies through his own power or discretion, or the ability to provide an exception or change in such policies, and indeed Mr. Long does not. According to Mr. Navarro, the Casino has implemented an institutional policy regarding service dogs and no employee—including Mr. Long—has the authority to ignore or deviate from that policy. Navarro Decl. ¶ 12. Mr. Long is the Vice President of Security and Transportation at the Casino, but has no discretion or authority to deviate from the Casino's policies and practices. *Id*.; *see Doe v. Montgomery Hosp.*, No. CIV. A. 95-3168, 1996 WL 745524 (E.D. Penn. Dec. 23, 1996) (dismissing ADA claim against nurse and physician's assistant because neither had ability to control or shape hospital policies); *see also Butler v. WinCo Foods, LLC*, Case No. ED CV 12-980 PA (DTBx), 2013 WL 12076010, at *1, 3 (C.D. Cal. Mar. 11, 2013) (holding manager of WinCo store *not* personally liable under Title III of ADA because even though he engaged in alleged discrimination he had no part in creating the service animal policy and no discretionary power to alter such policy or authorize plaintiff's requested accommodation).

As to the third factor, Plaintiff's sole allegation against Mr. Long is that in an email and voicemail dated April 30, 2024, two days *after* the alleged discriminatory

20

acts took place, Mr. Long told Plaintiff that "Valley View Casino & Hotel follows Federal ADA Guidelines for service animals." ECF 17 at 4.  Mr. Long was not involved in the alleged discriminatory acts against Plaintiff and as a result cannot be held liable.  This situation is in stark contrast to that presented in *Lentini*.  370 F.3d at 849 (holding individual liable under Title III as operator when he had "the power to facilitate any necessary accommodation" through "a position of authority" and "actively participated in the discriminatory acts").  *Compare Doe v. John F Kennedy Univ.*, No. C–13–01137 DMR, 2013 WL 4565061, at *6 (N.D. Cal. Aug. 27, 2013) (dismissing claims against chancellor of board of trustees over universities including university where alleged acts of discrimination occurred when chancellor was *not* directly involved in the alleged acts of discrimination), *with United States v. Morvant*, 843 F. Supp. 1092, 1093–95 (E.D. La. 1994) (imposing individual liability because individual defendant was sole owner, director, and president of dentistry practice and was charged with directly refusing treatment in violation of the ADA, and therefore he was the only proper defendant).

As these authorities demonstrate, the Second Amended Complaint against Mr. Long must be dismissed for the additional reason that under applicable case law, Mr. Long cannot be held personally liable under Title III of the ADA for the acts alleged under the circumstances presented here.

///

///

///

///

///

///

///

///

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the Defendants' Motion to Dismiss.  Because these deficiencies cannot be cured through revised pleadings, the Motion should be granted without further leave to amend.

DATED: August 28, 2024            PROCOPIO, CORY, HARGREAVES &
                                                    SAVITCH LLP


                                         By: /s/ Glenn M. Feldman
                                               Glenn M. Feldman
                                               Racheal M. White Hawk

                                            Attorneys for Defendants